UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LARRY DEWITT, II                                                                                        PLAINTIFF

VS.                         Civil No. 2:18-cv-02050-PKH-MEF

ANDREW M. SAUL, Commissioner,
Social Security Administration[1]                                                                      DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Larry Dewitt, II, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff filed his application for DIB on January 31, 2017, alleging an onset date of November 1, 2012, due to post traumatic stress disorder (PTSD), back issues, arthritis, high blood pressure, high cholesterol, neuropathy, leg and arm nerve damage, and night terrors. (ECF No. 18, pp. 183-84, 205). Plaintiff's claim was denied initially on May 17, 2017, and on reconsideration on June 19, 2017. (*Id*., pp. 94-108, 109-23). Plaintiff appeared and testified at a hearing on October 26, 2017, along with his wife, Felicia Dewitt, and a vocational expert, Stacy McKizik. (*Id*., pp. 52-93). On November 22, 2017, Administrative Law Judge ("ALJ"), Hon.

---

[1] On June 4, 2019, Andrew M. Saul was confirmed as the Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit.

1

Clifford Shilling, entered an unfavorable decision (*Id*., pp. 16-36), and Plaintiff requested review by the Appeals Council (*Id*., pp. 181-82). The Appeals Council denied the request for review on January 12, 2018. (*Id*., pp. 4-9).

At the time of the hearing, Plaintiff was 37 years of age and had the equivalent of a high school education. (*Id*., p. 57). Plaintiff alleged disability beginning November 1, 2012. (*Id*.). Plaintiff's past relevant work ("PRW") experience included working as an infantry weapons crew member, personnel clerk, and well service derrick worker. (*Id*., pp. 64-65, 85-87).

On November 22, 2017, the ALJ found Plaintiff had three severe impairments: right shoulder permanently dislocated; post-traumatic stress disorder (PTSD); and, depressive disorders. (*Id*., p. 21). The ALJ determined all other impairments were non-severe, as they have been responsive to treatment and/or cause no more than minimally vocationally relevant limitations. (*Id*.).

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, except Plaintiff was limited to occasional reaching, including overhead reaching, on the right. (*Id*., pp. 23-30). The ALJ further determined Plaintiff could perform work where interpersonal contact was incidental to work performed; complexity of tasks was learned and performed by rote, with few variables, and little judgment required; and, where supervision required was simple, direct, and concrete. (*Id*.). The ALJ concluded Plaintiff was unable to perform any PRW, but he could perform the requirements of representative occupations such as an agriculture produce sorter and furniture rental consultant. (*Id*., pp. 30-32). Considering the Plaintiff's age, education, work experience, and his RFC based on all impairments, the ALJ

concluded Plaintiff was not disabled from his alleged onset date of November 1, 2012, through his date last insured on September 30, 2016. (*Id*., pp. 31-32).

Plaintiff appealed this decision to the Appeals Council, but his request for review was denied on January 12, 2018. (*Id*., pp. 4-9). Plaintiff then filed this action on March 12, 2018. (ECF No. 1). This matter is before the undersigned for Report and Recommendation. Both parties have filed briefs (ECF Nos. 21, 22), and the case is ready for decision.

## II.    Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211,

3

1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled at any time from the alleged date of onset of November 1, 2012, through the date last insured of September 30, 2016. Plaintiff raises two issues on appeal, which can be summarized as: (a) the ALJ erred in failing to

find additional severe impairments; and, (b) the ALJ erred in his RFC determination. (ECF No. 21, pp. 2-8).

The Court has reviewed the entire record. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### **Step Two Analysis**

Plaintiff alleges the ALJ erred by failing to find that Plaintiff's back impairment and a cyst on his right wrist were severe impairments that caused additional limitations to his RFC. (ECF No. 21, pp. 4-6). Substantial evidence supports the ALJ's step two analysis.

As mentioned above, the Commissioner uses a five-step sequential process to evaluate and determine if a claimant is disabled. *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); 20 C.F.R. § 404.1520(a)(4). Step two of the evaluation states that a claimant is not disabled if his impairments are not "severe." *Simmons,* 264 F.3d at 754; 20 C.F.R. § 404.1520(a)(4). An impairment is "not severe" if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Bowen v. Yuckert,* 482 U.S. 137, 155 (1987) (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen,* 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and we have upheld on

numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *Simmons,* 264 F.3d at 755; *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997); and, *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996).

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (see [20 C.F.R.] § 404.1527). 20 C.F.R. § 404.1508.

Plaintiff contends the ALJ erred by failing to find he had a severe back impairment. In support, Plaintiff refers the Court to a November 2009 MRI of his back, which is three years prior to the relevant period, revealing a disc protrusion at L5 causing "severe left exit neuroforaminal narrowing." (ECF No. 18, pp. 67, 732-33). Plaintiff testified that he twice declined surgery as he was told that the outcome would not be successful. (*Id*., p. 67). Plaintiff further testified that he had difficulty sitting and standing and needed to alter his position every 30 minutes throughout the day. (*Id*., pp. 61, 70).

At a VA primary care visit on November 1, 2012, Plaintiff was using 5 mg hydrocodone during the day and 10 mg at night for his back pain and stated he was taking care of his 1 ½ year-old son while his wife works. (*Id*., pp. 704-05). On a primary care visit in November 2015, Plaintiff reported chronic low back pain not relieved by over-the-counter medications. (*Id*., p.

6

468). On examination, Plaintiff was able to get up and walk with good speed and balance, and he was able to bend over and reach his feet from a standing position. (*Id.*, pp. 468-69).

At a VA primary care visit on February 26, 2016, Plaintiff reported neuropathic pain in his legs, however, on examination he was able to get up and walk with good speed and reported there was no pain currently present. (*Id.*, pp. 451-56). At a VA primary care visit on September 6, 2016, Plaintiff continued to report back pain, and medications were continued as prescribed. (*Id.*, pp. 424-30).

The medical records do not reflect any functional limitations prescribed by a physician as a result of Plaintiff's back pain. The record indicates that Plaintiff's back pain was conservatively treated with pain medication and did not cause more than a minimal effect on his abilities.

In July and November 2015, Plaintiff reported that he rode motorcycles with friends on trips (*Id.*, pp. 467, 484, 487-88), and in his brief he essentially asks the Court to assume that his back would naturally have gotten worse and more painful over time (ECF No. 21, p. 4). However, at Step Two, Plaintiff has the burden of proving his impairment is severe by medical evidence rather than merely his statement of his symptoms. Therefore, the ALJ did not err in failing to find Plaintiff had a severe back impairment.

Plaintiff also contends the ALJ should have found he suffered from a severe wrist impairment. (ECF No. 21, p. 4). The ALJ noted that Plaintiff was examined by a primary care nurse in November 2014. (ECF No. 18, p. 27). Upon examination, it was noted that a knot on his right wrist appeared to be a ganglion cyst, and an orthopedic consultation was scheduled. (*Id.*).

X-rays of the wrist taken on November 25, 2014, showed normal alignment of the wrist bones without overt fractures and no significant radiographic abnormalities. (*Id*., p. 299). After the relevant time at issue in March 2017, the ganglion cyst was drained. This is the extent of the medical evidence regarding the cyst on Plaintiff's wrist. And, there is no evidence in the record that Plaintiff's wrist causes more than a minimal effect upon Plaintiff's ability to work. Accordingly, the ALJ did not err in failing to find Plaintiff had a severe wrist impairment.

**RFC Determination**

Plaintiff argues the ALJ erred in his RFC determination as his PTSD and medications cause him "great difficulty functioning in a work setting or in dealing with other people" and affect his ability to concentrate and stay on task. (ECF No. 21, pp. 3-8). Plaintiff also asserts the ALJ erred by not assigning greater physical limitations to the use of his right dominant hand due to his shoulder and back impairments. (*Id*., pp. 5-8).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

As previously discussed, the evidence was sparse with regard to Plaintiff's back and wrist impairments. "A claimant's allegations of disabling pain may be discredited by evidence that he or she has received minimal medical treatment and/or has taken medications, other than aspirin, for pain only on an occasional basis." *Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir. 1986) (citing *Weber v. Harris,* 640 F.2d 176, 178 (8th Cir. 1981)).

On November 14, 2012, Plaintiff had an orthopedic surgery consult after falling on his right shoulder. (ECF No. 18, pp. 383-85). Plaintiff was prescribed hydrocodone (in addition to hydrocodone already prescribed for his back) and indicated that he had already taken all that medication - the full 30 in the first two days - and he wanted some more. (*Id*., pp. 384-85). X-rays dated November 12, 2012, showed a grade 3 right acromioclavicular separation. (*Id*., p. 385). It was noted this would be normally managed non-operatively, but Plaintiff advised he was active and worked on oil rigs and would like a surgeon. (*Id*.). Plaintiff was advised he could not get more narcotics for another week and would have to take them as prescribed. (*Id*.). Plaintiff was scheduled to see a local shoulder specialist and advised to rest and ice his shoulder and begin gentle Codman and pendulum exercises. (*Id*., p. 384).

At a VA primary care appointment on November 3, 2015, the physician noted Plaintiff's shoulder separation in 2012, and three previous surgeries. (*Id*., p. 467). Plaintiff reported moderately severe right shoulder pain not adequately relieved by over-the-counter medications and chronic low back pain. (*Id*., p. 468). On examination, the physician observed Plaintiff could get up and walk with good speed and balance and observed no or mild range of motion limitation of Plaintiff's right shoulder with crepitus towards 180 degrees of abduction, and Plaintiff was able to bend over and reach his feet from a standing position. (*Id*., pp. 468-69). Plaintiff provided no additional medical evidence that Plaintiff's shoulder, back, or right dominant hand impairments otherwise restricted him beyond that the ALJ found in his RFC.

The ALJ also considered Plaintiff's mental impairments. During a suicide risk assessment on June 19, 2015, Plaintiff reported a recent overdose on pills and that he loses his temper easily; however, he stated there were no problems in his close relationships or family, that he takes his medications as prescribed, and he was not feeling hopeless. (*Id*., pp. 481-82). During an outpatient mental health visit on July 28, 2015, Plaintiff noted that he was part of a veterans motorcycle group, that he could get angry and depressed, but that he was doing a lot better than his last visit and has been working on his issues and moving forward. (*Id*., pp. 483-87). The social worker encouraged Plaintiff to attend group therapy for PTSD, but Plaintiff declined. (*Id*., p. 487).

In a psychiatric progress note dated September 6, 2016, Plaintiff reported doing "pretty good," taking Benadryl for sleep and continuing his venlafaxine for depression and prazosin for nightmares. (*Id*., p. 419). Plaintiff reported that his sleep was good with only occasional

nightmares, and he denied alcohol use but admitted to smoking marijuana "occasionally." (*Id.*, p. 420). Plaintiff's mental status examination revealed normal results. (*Id.*).

On November 22, 2016, Plaintiff reported he lived with his fiancé and their three children and things were going "pretty good," so long as he took his medicine as prescribed. (*Id.*, pp. 407-09). Plaintiff indicated he spent his time rebuilding his house and working on his motorcycle and traveling a lot. He had just returned from visiting friends in Colorado. (*Id.*, p. 409). Plaintiff reported that he had trouble with memory and focus and was easily agitated, anxious, and sad. (*Id.*, pp. 409-10).

In a Function Report completed by Plaintiff's wife on March 19, 2017, she noted Plaintiff had no problems with personal care, helped get the kids ready for school, did general housework and daily living tasks, such as folding laundry and taking out the trash, and ran errands with periodic resting and napping throughout the day. (*Id.*, p. 214-16). She noted Plaintiff could drive and go out alone, could shop, and handle finances. (*Id.*, p. 217). Plaintiff's hobbies were listed as playing with his kids, riding his motorcycle, watching movies, fishing and hunting (which he did on days when he physically could) and mostly spent time with his family. (*Id.*, p. 218).

Plaintiff's wife completed another Function Report on May 30, 2017, noting Plaintiff had no problems with personal care, made short trips to town with her, played with his children and helped dress them and change diapers. (*Id.*, pp. 238-39). She reported he could prepare simple meals for himself and mow with frequent breaks. (*Id.*, p. 240). On May 30, 2017, Plaintiff reported that while his pain was daily and constant, and that he sometimes overdoes it helping

his wife around the house, his pain medication makes it somewhat tolerable, and he still suffered from small bouts of mental problems even while on his medication. (*Id.*, pp. 246-47).

In considering whether Plaintiff's mental impairments met or equaled a listing, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and, in adapting or managing oneself. (*Id.*, p. 22). The ALJ specifically noted that Plaintiff struggled with his impairments at times, but that VA records from September 2016 noted Plaintiff reported that his mood was "pretty good," his sleep was good, and he was having only occasional nightmares. (*Id.*, p. 22). In November 2016, Plaintiff reported spending time with a veterans' motorcycle group, traveling a lot, and just getting back from visiting friends in Colorado. (*Id.*). Finally, the ALJ noted that none of the State agency psychological consultants concluded that a mental listing was medically equaled. (*Id.*).

Plaintiff had an inpatient psychiatric admission to the VA from June 11-12, 2013, due to his PTSD, depression, and suicidal ideations. It was determined that methamphetamine abuse for three days contributed to this episode, and he was discharged with chronic PTSD, still symptomatic with prominent nightmares, and chronic insomnia. It was also noted that relationship issues concerning visitation time with his 2-year old son was also a factor. (*Id.*, pp. 338-42). Plaintiff was released with gabapentin and meloxicam for pain, prazosin for nightmares, and venlafaxine for depression. It was noted he was a disabled veteran, capable of employment, able to manage self/funds and may do therapeutic work/volunteerism as tolerated. (*Id.*, p. 339).

The ALJ conducted a thorough review of Plaintiff's mental health records from the VA. The records reveal that Plaintiff was not always compliant with the treatment recommendations, did not consistently seek out treatment, and he admitted to illegal drug use. *See Roland v. Colvin*, No. 4:14-cv-22-DPM-BD, 2014 WL 6769901, at *3 (E.D. Ark. December 1, 2014) (holding drug use is an appropriate consideration in evaluation of credibility if it creates an inconsistency). Accordingly, the undersigned concludes that the ALJ's mental RFC is supported by substantial evidence.

## IV. CONCLUSION

After having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's Decision to deny the Plaintiff DIB benefits. It is recommended that the ALJ's Decision be affirmed, and that Plaintiff's Complaint (ECF No. 1) be DISMISSED WITH PREJUDICE.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 30th day of July 2019.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE